**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| LORI F.[1] | Case No. 3:22-cv-319 |
|       Plaintiff, | Rice, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
|       Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff Lori F. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On June 22, 2020, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging she became disabled on March 5, 2019, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Thereafter, a telephone hearing was held on July 13, 2021, before ALJ Kevin Barnes; wherein Plaintiff, represented by counsel, and a vocational expert (VE)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

testified. (Tr. 60-82). On September 20, 2021, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 17-24).

Plaintiff was born in 1962 and was 58 years old at the time of the ALJ's decision. She graduated high school and has past relevant work as an accounts payable clerk.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "trochanteric bursitis of the left hip; iliotibial band syndrome of the left hip; osteoarthritis; lumbar radicular pain; neuropathic pain; hypocalcemia; iron deficiency anemia; and chronic fatigue." (Tr. 19). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She can lift up to 20 pounds occasionally and lift or carry up to 10 pounds occasionally; stand or walk for approximately 4 hours per 8-hour workday and sit for approximately 6 hours per 8-hour workday, with normal breaks; requires a cane for ambulation; never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, and kneel; and avoid hazardous machinery and unprotected heights.

(Tr. 21). The ALJ concluded that based on Plaintiff's age, education, work experience, and RFC, a hypothetical individual would be able to perform the requirements of her past relevant work as an accounts payable representative. (Tr.24). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred by: (1) failing to find any severe mental health impairment at Step-two of the sequential evaluation; and (2) failing to properly evaluate the prior administrative medical findings. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

**I.  Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

3

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Step-two finding*

Plaintiff argues that the ALJ erred by failing to find any mental health impairment at step-two of the sequential evaluation and by failing to include any incorporate any mental limitations in his RFC determination. This argument lacks merit.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). In his step two finding, the ALJ noted that Plaintiff also had several impairments he found to be non-severe. (Tr. 19). However, the ALJ found that there is no evidence that any of Plaintiff's non-severe impairments imposed more than minimal functional limitations on the Plaintiff's ability to perform work related activity. Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

Regardless, even if the Court found the ALJ erred, errors at step two of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at step two. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that

5

are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments including trochanteric bursitis of the left hip; iliotibial band syndrome of the left hip; osteoarthritis; lumbar radicular pain; neuropathic pain; hypocalcemia; iron deficiency anemia; and chronic fatigue and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's mental impairments as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination.

Notably, the ALJ noted that Plaintiff's medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. (Tr. 19). In so concluding, the ALJ considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments, known as the "paragraph B" criteria. In this regard, the ALJ determined that Plaintiff had no limitations in understanding, remembering, or applying information, and no limitation in interacting with others. (Tr. 20). The ALJ found that Plaintiff had "mild" (i.e.. not indicative of severe impairment) limitations in the other two areas – concentration, persistence, and pace; and adapting or managing oneself. (Tr. 20). In making these findings, the ALJ cited to generally normal mental

6

findings from treatment notes, consultative examinations and uncontroverted opinion evidence. Namely, the state agency psychologists reported that Plaintiff has no more than mild limitations in any of the functional areas of mental functioning. They further opined that Plaintiff's mental health impairments are non-severe and that she has no more than mild limitations in any mental health area. (Tr. 20, 86, 96).

As noted by the Commissioner, the purpose of the severity inquiry at the second step of the sequential disability evaluation process is merely to screen out claims that are medically groundless. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."). Where an ALJ determines that one or more impairments is severe at step two and proceeds with the sequential process, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz*, 837 F.2d at 244 (failure of Secretary to find that an impairment was severe was not reversible error because he found that claimant had other severe impairments); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). Thus, Plaintiff has not established reversible error because the ALJ did not "screen out" her claim at step two. Rather, he found that Plaintiff had severe impairments at step two and proceeded to the remaining steps of the sequential evaluation process, and explained his reasons for finding that Plaintiff did not have severe mental impairments.

Although the ALJ found Plaintiff's mental impairments to be non-severe, Plaintiff argues that the Regulations require the ALJ to consider all impairments, including non-severe impairments. In this regard, Plaintiff argues that the ALJ improperly failed to consider and include any mental health impairment in his RFC. However, as noted above, the ALJ explicitly considered Plaintiff's mental impairments and determined, based on the evidence of record, that Plaintiff's mental impairments did not result in any functional limitations. (Tr. 19-20). Thus, the ALJ did not include any mental limitations in his RFC. Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

Accordingly, the undersigned finds that substantial evidence supports the ALJ's step-two finding. See *Longworth v. Comm'r of Soc. Sec*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

*2. Evaluation of Prior Administrative Medical Findings*

Plaintiff argues next that the ALJ failed to consider the supportability factor in evaluating the prior administrative medical findings of the state agency physical and psychological consultants.

The regulations divide evidence into categories. 20 C.F.R. § 404.1513 ("Categories of evidence."). One category of evidence is "medical opinion." Id. The regulation states that "medical sources," as defined in 20 C.F.R. § 404.1502, include state licensed medical providers operating within their license who provide medical opinions.

8

The ALJ will then evaluate these opinions under 20 C.F.R. § 404.1520c(c) (evaluating medical opinions and prior administrative findings). See 20 C.F.R. § 404.1513. In addition to medical opinions, another category of evidence is "prior administrative medical findings." 20 C.F.R. § 404.1513 (categories of evidence). A "prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…" including their residual functional capacity finding. 20 C.F.R. § 404.1513(a)(5). Administrative Law Judges are not required to adopt the findings, but "will" consider the findings from these physicians. Id. at (b); see also 20 C.F.R. § 404.1513a ("Evidence from our Federal or State agency medical or psychological consultants"); SSR 17-2p.

The regulation explains that the ALJ will articulate "how persuasive" a medical opinion or finding is, 20 C.F.R. § 404.1520c(a), and that when determining the persuasiveness of an opinion or finding, the "supportability" and "consistency" factors in the regulation are the most important, and the ALJ "will explain how we considered the supportability and consistency factors…" See 20 C.F.R. § 404.1520c (b)(2) ("Most important factors"). There are other factors, but the ALJ is "not required" to explain how the other factors were considered but "may" do so when appropriate. Id.

In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

9

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.). Consistency addresses whether other medical professions agree.

Plaintiff argues that the ALJ failed to consider the supportability factor in evaluating the prior administrative medical findings of the state agency physical and psychological consultants. Plaintiff's contention is unavailing.

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. See *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Here, the ALJ's decision was not outside of the permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts*." Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009*). See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate

10

evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Here, the undersigned finds that the ALJ properly considered the supportability factor. The agency doctors, Lesly Rudy, Ph.D., and Kristen Haskins, Psy.D., both psychologists, found that Plaintiff's mental disorders were non-severe. (Tr. 86, 96). The ALJ found that their findings were consistent with the overall evidence, including the treatment notes, and the ALJ also considered that their findings were uncontroverted by the record evidence. (Tr. 23). In so concluding, the ALJ cited to the objective evidence and treatment records. As such, the ALJ properly considered the supportability factor,

Furthermore, even if the Court were to assume there was error, Plaintiff does not carry her burden to show that this alleged error is harmful. Namely, Plaintiff does not identify any limitations that were included by the agency physicians that the ALJ declined to adopt.

### III. Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED**, and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LORI F. | Case No. 3:22-cv-319 |
| Plaintiff, | Rice, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).